25 Civ. 5244 (PAE)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CRISTY GONZALEZ, and TYRENE GONZALEZ,

Plaintiffs,

-against-

THE CITY OF NEW YORK; NEW YORK CITY POLICE
DEPARTMENT; POLICE OFFICER JAYTHER
LIRIANO; "JOHN DOE", and "RICHARD ROE",

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

### STEVEN BANKS

*Corporation Counsel of the City of New York*
*Attorney for Defendants City and NYPD*
*100 Church Street*
*New York, N.Y. 10007*

*By: Joseph Zangrilli*
*Tel: (212) 356-2657*

## PRELIMINARY STATEMENT

Plaintiffs Cristy Gonzalez and Tyrene Gonzalez were arrested when the search of their residence, pursuant to a search warrant, revealed illegal drugs. Plaintiffs, by and through their counsel, Gary S. Fish, Esq., are suing for alleged violations of their civil rights that occurred when they were arrested on January 8, 2025. However, Plaintiffs' arrests were supported by probable cause and Plaintiffs have not properly alleged a municipal liability claim against the City. For these reasons, the Complaint should be dismissed.

## BACKGROUND

On January 3, 2025, the Honorable S. Deronn Bowen signed Search Warrant #B004-2025 ("the Warrant"),  which expressly authorized, the search of locked containers, cabinets, closets, strong boxes, desks, suitcases, or briefcases, or other containers therein, on the premises at 3050 Park Avenue, #16B, Bronx, New York 10451. Complaint, filed on January 29, 2026, Dkt. No. 15 ("Compl."), ¶7. Plaintiffs allege that Desmond Edwards and Plaintiffs resided at 3050 Park Avenue, #16B, Bronx, NY 10451. Compl. ¶10.

On January 8, 2025, Police Officers Jayther Liriano and other officers, acting pursuant to the Warrant, entered the premises, and discovered crack cocaine in a black garbage bag in a closet. *Id.* at ¶7. The officers arrested Desmond Edwards, whose seizure, was expressly authorized by the Warrant. *Id.* at ¶7. The officers also arrested Plaintiffs, transported them to a police precinct, where they were held for five hours and released. *Id.* at ¶11, 19.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a pleading is properly dismissed when, read in the light most favorable to the non-movant, it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should therefore dismiss a complaint when it appears that a plaintiff has failed to plead a plausible claim of relief. *See Id*.

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Generally, facts may be judicially noticed if they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). [1] Accordingly, the Warrant, which is both a public court record and incorporated by reference in the Complaint, can properly be considered by the Court. *See Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2006).

## ARGUMENT

### POINT I

### THE COMPLAINT FAILS TO STATE A FOURTH AMENDMENT CLAIM

A.    **The Search Was within the Scope of the Warrant.**

Plaintiffs allege that the search of a garbage bag in a closet at the premises exceeded the scope of the Warrant. Compl. ¶¶ 9, 15. The Fourth Amendment requires that a search warrant "particularly describ[e] the place to be searched, and the persons or things to be

---

[1] Federal Rule of Evidence 201 provides, in part, that a court may take notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

seized." U.S. Const. amend. IV. The scope of a warranted search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). When reviewing a challenged warrant, courts accord "considerable deference to the probable cause determination of the issuing magistrate." *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) (citation omitted). Moreover, the Fourth Amendment "does not require that every item or document to be seized be specifically identified within the warrant. Indeed, generic terms can properly be used to describe the material to be seized." *United States v. Dinero Express, Inc.*, 2000 U.S. Dist. LEXIS 2439, at *22 (S.D.N.Y. Mar. 6, 2000) (internal citations omitted).

Here, the Warrant authorized a search of the premises at 3050 Park Avenue, #16B, Bronx, New York, and the search of "locked containers, cabinets, closets, strong boxes, desks, suitcases, or briefcases, or other containers therein." Compl. ¶ 7. Plaintiffs have alleged no facts challenging the validity of the Warrant or the magistrate's probable cause determination, and there is no basis to disturb it. Plaintiffs' sole contention is that the search of a garbage bag in a closet was "beyond the scope" of the Warrant because a garbage bag was not "expressly authorized." Compl. ¶¶ 9, 15. This argument fails for several independent reasons.

The search of the garbage bag was within the scope of the Warrant. The plain meaning of bag is a "flexible container." Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/bag (last visited Mar. 18, 2026). Because the search was conducted pursuant to a valid warrant, the search did not violate Plaintiffs' constitutional rights. *Abreu v. Romero*, 2010 U.S. Dist. LEXIS 120188, at *15, 2010 WL 4615879, at *15 (S.D.N.Y. Nov. 9, 2010) ("[T]he search of the apartment was conducted pursuant to a facially valid warrant and therefore did not violate Plaintiff's Fourth Amendment

rights. Plaintiff does not provide specific facts, nor does he identify evidence in the record, to create a factual dispute as to the validity of the Warrant.")

The search of the garbage bag was independently supported by the Supreme Court's holding in *United States v. Ross*, 456 U.S. 798 (1982). In *Ross*, the Court held that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *Id.* at 820–21. Accordingly, "a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." *Id.* at 821. The Court emphasized that this rule "applies equally to all containers," and expressly rejected any constitutional distinction between "worthy" and "unworthy" containers—including "paper bags, locked trunks, lunch buckets, and orange crates." *Id.* at 822. Thus, a warrant authorizing a search of premises for narcotics inherently authorizes officers to open any container on the premises in which narcotics might be concealed.

That the Warrant here enumerated specific types of containers—"locked containers, cabinets, closets, strong boxes, desks, suitcases, or briefcases, or other containers therein"—does not narrow the authority that *Ross* independently confers. Magistrates routinely include such language in search warrants to make explicit what *Ross* already implies and to provide operational guidance to executing officers in the field. Notably, the enumerated items share a common feature: they are all lockable or sealable containers—precisely the types of containers that a field officer might hesitate to open without specific authorization. The enumeration is best understood as assuring executing officers that they were authorized to search even those containers in which occupants have the highest expectation of privacy. Reading the

4

enumeration as a limitation that *excludes* containers in which occupants have a *lesser* expectation of privacy (such as an unsealed garbage bag) would invert the warrant's logic. A magistrate who found probable cause to believe narcotics were present on the premises and who expressly authorized officers to pry open locked strong boxes and briefcases could not plausibly have intended to forbid them from looking inside an open or sealed bag in a closet. In the absence of any affirmative indication that the Warrant was intended to restrict the scope of the container search below the *Ross* default, the enumeration is most naturally read as a reinforcement of, rather than a departure from, the officers' existing authority. *See United States v. Ross*, 456 U.S. at 821 (rejecting "nice distinctions between closets, drawers, and containers" when "a legitimate search is under way, and when its purpose and its limits have been precisely defined[.]").

Even if the enumeration were read as limiting the scope of the search, Plaintiffs still fail. The enumerated items—closets, cabinets, desks, strong boxes, suitcases, briefcases—are not a homogeneous class sharing a single unifying characteristic that would exclude a garbage bag. To the extent they share any common feature, it is that they are lockable or sealable; as noted, applying *ejusdem generis* to confine "other containers" to similarly secured items would produce the paradoxical result of authorizing searches of containers with the greatest privacy protection while excluding those with the least. That is not a plausible construction of the Warrant, which, expressly authorized the search of "closets," and the garbage bag was located inside a closet. Officers lawfully searching the closet were entitled to open a container within it that could conceal the objects of the search. *Ross*, 456 U.S. at 820–21.

**B.    Plaintiffs' False Arrest Claim Fails.**

**(1) The Arrests Were Supported by Probable Cause.**

Because the search was lawful, the contraband discovered during the search provided probable cause to arrest Plaintiffs. To establish a § 1983 false arrest claim, a plaintiff

5

must demonstrate that "'(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Caraballo v. City of New York*, 2012 WL 12883307, at *5 (E.D.N.Y. June 26, 2012), *aff'd*, 526 Fed. Appx. 129 (2d Cir. 2013) (quoting *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003)). "Probable cause is a complete defense to a claim of false arrest." *Id.* (citing *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985)). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Mercado v. City of New York*, 2024 WL 3185963, at *5 (S.D.N.Y. June 26, 2024) (quoting *Harrison v. Cty. of Nassau*, 804 F. App'x 24, 27–28 (2d Cir. 2020)). The inquiry is objective, assessed under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 233 (1983); *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004).

Plaintiffs also argue that they were not listed on the Warrant and, therefore, their arrest was not "expressly authorized." Compl. ¶8. However, Officer Liriano's discovery of crack cocaine gave him probable cause to arrest the residents of the apartment, including Plaintiffs. "[W]here there is evidence to believe that a person is in constructive possession of contraband, the arresting officer has probable cause to arrest." *Caraballo v. City of New York*, 2012 WL 12883307, at *6. *See also T.R. by and through Yon-Rawls v. City of New York*, 2018 WL 3962830, at *15 (S.D.N.Y. Aug. 16, 2018)("'[T]he doctrine of constructive possession allows the police to find probable cause to arrest anyone in a dwelling when contraband is discovered in plain view and it reasonably appears that all members of the dwelling exercised dominion and control over the area in which the contraband is found.'")(quoting *Takacs v. City of New York*,

6

2011 WL 8771384, at *3 (S.D.N.Y. Jan. 24, 2011)(citing *United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006)); *accord Abreu v. Romero*, 2010 WL 4615879, at *6 (S.D.N.Y. Nov. 9, 2010) ("[W]here there is evidence that an individual is in constructive possession of contraband, police officers have reasonably trustworthy information sufficient to believe the crime of possession is being committed and therefore have probable cause to arrest."), *aff'd*, 466 F. App'x 24 (2d Cir. 2012))(summary order); *Abdul-Rahman v. City of New York*, 2012 U.S. Dist. LEXIS 45653, at *16 (E.D.N.Y. Mar. 27, 2012)(finding probable cause to arrest all of the occupants of an apartment following the recovery of a large quantity of drugs during a search warrant execution).

Here, Officer Liriano entered the premises legally, pursuant to the Warrant, and discovered contraband inside an unlocked closet in the apartment, giving them probable cause to arrest the residents, including Plaintiffs.

### (2) Officer Liriano Is Entitled to Qualified Immunity.

Even if Police Officer Liriano lacked probable cause to arrest, he had arguable probable cause to arrest and is entitled to qualified immunity. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "Therefore, in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." *Caldarola v. Calabrese*, 298 F.3d, at 162 (citing *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995)("'[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials . . . should not be held personally liable.'")(quotation omitted)). The court must look at the "totality of the

circumstances" and consider "the facts available to the officer at the time of the arrest." *Caldarola v. Calabrese*,  298 F.3d 156, at 162 (quoting *Illinois v. Gates*, 462 U.S. 213, 233 (1983)(reversing the denial of summary judgment on the issue of qualified immunity)).   In addition, "in the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause." *Caldarola v. Calabrese*,  298 F.3d 156, at 162 (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)); *see also Jackson v. Suffolk County*, 87 F. Supp. 3d 386, 406 (E.D.N.Y. Feb. 20, 2015)(ruling that a police officer had arguable probable cause to arrest Julie Jackson based on the undisputed facts that officers discovered drugs in a jacket pocket in a common area of the house where Jackson lived with her husband and son and that Jackson's husband did not admit that the drugs were his).

Here, Officer Liriano lawfully entered Plaintiffs' home pursuant to a duly executed search warrant. Upon discovering what appeared to be crack cocaine in a closet on the premises, Officer Liriano had reasonably trustworthy information to believe that Plaintiffs knowingly and unlawfully possessed a controlled substance. At minimum, these facts established probable cause for criminal possession of a controlled substance in the seventh degree, which requires only that a person "knowingly and unlawfully possess[] a controlled substance." N.Y. Penal Law § 220.03. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). Officer Liriano had probable cause, or at minimum arguable probable cause, to arrest Plaintiffs.

## POINT II

### PLAINTIFFS' CLAIMS AGAINST THE NYPD ARE NOT COGNIZABLE

Plaintiff names NYPD as a defendant but it lacks the capacity to be sued.  New York City Charter § 396 provides that "[a]ll actions and proceedings for the recovery of penalties

for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17, § 396; *Orraca v. City of New York*, 897 F. Supp. 148, 152 (S.D.N.Y. 1995) ("[T]he 25th Precinct is a subdivision of the Police Department without the capacity to be sued."). Thus, NYPD should be dismissed from this action.

**POINT III**

**PLAINTIFFS' *MONELL* CLAIM FAILS**

In the Complaint, Plaintiffs assert that "the false arrest …was part and parcel of an unconstitutional municipality implemented plan, decision, custom, rule, regulation and/or order…." Compl. ¶15.

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a municipality may not be held liable under the theory of *respondeat superior* for the actions of an employee. "'Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012)(quoting *Monell*, 436 U.S. at 691). "'[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury.'" *Stein v. Town of Greenburgh*, 2025 WL 903758, at *10 (S.D.N.Y. Mar. 25, 2025).

Plaintiffs Monell claim must fail because there is no underlying constitutional violation. "It is well-settled that a Monell claim cannot succeed without an underlying constitutional violation". *Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (finding that a district court

9

does not need to address Monell liability if it finds no underlying constitutional violation). Officer Liriano had probable cause for the search and the arrest.   Therefore, there is no underlying constitutional violation.

Even if Officer Liriano violated Plaintiffs' constitutional rights, the *Monell* claim must fail because, "in order for an individual deprived of a constitutional right to have recourse against a municipality under section 1983, she must show that she was harmed by a municipal 'policy' or 'custom.'" *Davis v. City of N.Y.*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003)(quoting *Monell*, 436 U.S. at 690-91)).   Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the state." *Davis v. City of N.Y.*, 228 F. Supp. 2d at 336; *see also Bird v. Cnty. of Westchester*, 2022 WL 2263794, at *32 (S.D.N.Y. June 23, 2022) ("Plaintiff fails to allege the existence of any other similar incident, which 'dooms Plaintiff's claim because a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality.'")(quotation omitted).

Finally, conclusory statements cannot make out a *Monell* claim.   "To support such a claim, the mere assertion of the existence of policy is not enough." *Radin v. City of New York*, 2016 U.S. Dist. LEXIS 95955, at *12 (E.D.N.Y.) ( "Instead, there have to be sufficient factual details that meet *Iqbal* and *Twombly*'s plausibility standard, rather than boilerplate allegations of unconstitutional policies or practices." *Radin*, 2016 U.S. Dist. LEXIS 95955, at *12 (citing *Plair v. City of New York*, 789 F. Supp. 2d 459, 468–69 (S.D.N.Y. 2011)).

Here, the Complaint makes boilerplate allegations and describes one single factual instance – Plaintiffs' arrest on January 8, 2025.   This is insufficient to show a municipal custom or policy.   Thus, Plaintiff's *Monell* claim must be dismissed.

10

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed, because Plaintiffs have not stated a claim upon which relief can be granted, and that they be granted any other and further relief it deems appropriate.[2]


Dated:          New York, NY
                April 27, 2026

                                        STEVEN BANKS
                                        Corporation Counsel of the City of New York
                                        *Attorney for Defendants City and NYPD*
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-2670

                                        By: /s/ *Joseph Zangrilli*
                                            Joseph Zangrilli
                                            *Senior Counsel*
                                            Special Federal Litigation


Cc:    **VIA ECF**
       *All counsel of record.*

---

[2] **Word Count Certification.** In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 3,205.  I have relied on the word count function of Microsoft Word to prepare this certification.

11